# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**REGINALD JOHNSON,**              Case No. 5:18 CV 1846

    Petitioner,              Judge James Gwin

    v.              Magistrate Judge James R. Knepp II

**WARDEN BRIGHAM SLOAN,**

    Respondent.              **REPORT AND RECOMMENDATION**

### INTRODUCTION

*Pro se* Petitioner Reginald Johnson ("Petitioner"), a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1-2). Respondent Dave Marquis[1] ("Respondent") filed an Answer (Doc. 6) and Petitioner filed a Reply (Doc. 8). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2).

---

1. At the time of Respondent's Answer, Petitioner was incarcerated at the Richland Correctional Institution where Marquis was the Warden, therefore he was the proper party respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 424 (2004). Petitioner has since been released from custody. *See* Doc. 9 (address change notice). However, Petitioner remains under post-release control supervision. *See* https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A670516 (last visited December 31, 2019). *See Spencer v. Kenma*, 523 U.S. 1, 7 (1998) ("An incarcerated convict's (or a parolee's) challenge to the validity of his conviction always satisfies the case-or-controversy requirement, because the incarceration (or the restriction imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction."); *see also In re Stansell*, 828 F.3d 412, 416 (6th Cir. 2016) ("Individuals subject to post-release control, like individuals subject to supervised release in the federal system, satisfy the "in custody" requirement.") (citing *United States v. Sandles*, 469 F.3d 508, 517–18 (6th Cir. 2006); *Kusay v. United States*, 62 F.3d 192, 193 (7th Cir. 1995)).

(Non-document entry dated August 23, 2018). For the reasons discussed below, the undersigned recommends the Petition (Doc. 1-2) be DENIED.

## FACTUAL BACKGROUND

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, erroneous factual findings by the state court. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Ninth District Court of Appeals set forth the following facts on direct appeal:

> {¶ 2} This matter arises from an incident that took place at Alex's Bar and Grill ("Alex's Bar") on South Arlington Street in Akron, Ohio. In the early morning hours of August 1, 2014, W.R., D.M., and C.P. were allegedly stabbed during a bar fight between Mr. Johnson and an unknown female member of the Zulu motorcycle gang.

> * * *

> {¶ 33} Here, W.R. testified that he was at Alex's Bar at the time of the stabbing, and that his girlfriend, Ms. Wells, owns and operates the bar. W.R. indicated that, on the date in question, he heard Mr. Johnson say, "[l]et me get a drink from that Zulu bitch." He then saw Mr. Johnson "arguing with a female," who subsequently "sucker punched" Mr. Johnson. As the situation escalated, W.R. became involved and told "the female," "I'll take care of it," "[l]et me handle it." However, the female then attempted to hit Mr. Johnson, first with a beer bottle, and, then, with a liquor bottle from behind the bar. W.R. testified that, while "trying to * * * diffuse the situation," he "got stabbed." From a photo array of six individuals, W.R. identified Mr. Johnson with "100 percent" certainty as the person who stabbed him.

> {¶ 34} Ms. Wells, the owner and operator of Alex's Bar, testified that she saw Mr. Johnson with a knife on the date of the incident. Further, Ms. Wells stated that she saw W.R.'s stab wounds on that same date. From a photo array of six individuals, Ms. Wells also identified Mr. Johnson as the person who stabbed W.R.

> {¶ 35} Detective Ross testified that he administered the photo arrays to both W.R. and Ms. Wells. According to Detective Ross, W.R. identified Mr. Johnson as the

person who stabbed him with "100 percent" certainty, and Ms. Wells also identified Mr. Johnson, first with one "100 percent" certainty, and then with "200 percent" certainty. Detective Ross further testified that, during the administration of the photo array, W.R. stated "[Mr. Johnson] stabbed me."

* * *

{¶ 41} Here, W.R. testified that the altercation began *after* Mr. Johnson stated, "[l]et me get a drink from that Zulu bitch." W.R. indicated that Mr. Johnson "disrespected" the female by "call[ing] her out of her name," and "[t]hat's where it started from." Further, W.R. described the scene at Alex's Bar as a "commotion," with "so much activity going on." When W.R. attempted to diffuse the situation, Mr. Johnson stabbed him in the arm.

{¶ 42} Ms. Wells also described the atmosphere in the bar as being a "commotion," and stated that there could have been 50 people there at the time. Ms. Wells testified that she saw W.R. "trying to break up the fight" between Mr. Johnson and the female, and that Mr. Johnson had a knife.

{¶ 43} Ms. Glover testified that she was at Alex's Bar at the time of the incident. Ms. Glover testified that: (1) Mr. Johnson touched her and another woman's buttocks and stated, "B, I can buy both of you all;" (2) Mr. Johnson "put some money on the table;" and (3) Mr. Johnson punched her in the face, as well as punching the other woman. Ms. Glover also testified that she saw something in Mr. Johnson's hand that she could not identify, and that Mr. Johnson stabbed C.P. during the altercation. Originally, Ms. Glover could not make an in-court identification of Mr. Johnson. However, after walking past him while exiting the courtroom, she was able to re-take the stand and identify Mr. Johnson as the assailant.

*State v. Johnson*, 2016 WL 7496576, at *1, *6-8 (Ohio Ct. App.).[2]

## PROCEDURAL HISTORY

State Court Conviction

In October 2014, a Summit County, Ohio grand jury indicted Petitioner on three counts of felonious assault. (Ex. 1, Doc. 6-1, at 4-5). Petitioner was appointed counsel, and pleaded not guilty. (Ex. 2, Doc. 6-1, at 6).

---

2. Additional facts relevant to Petitioner's specific claims for relief are set forth in the discussion of those claims *infra*.

The case proceeded to trial. At the close of the State's case, Petitioner moved for acquittal under Ohio Criminal Rule 29, which the trial court denied. (Trial Tr. Vol. 4 at 403-08, Doc. 6-4, at 104-09). Petitioner, through counsel, also moved for a continuance so that he could present the testimony of Officer Urdiales, which the trial court denied. (Trial Tr. Vol. 5 at 413-15, Doc. 6-5, at 4-6). Petitioner's counsel presented a proffer regarding Officer Urdiales's police report. (Trial Tr. Vol. 5 at 415-21, Doc. 6-5, at 6-12). The jury found Petitioner guilty on Count 1, not guilty on Count 2, and deadlocked Count 3. *Johnson*, 2016 WL 7496576, at *1.[3]

Prior to sentencing, Petitioner moved for acquittal under Ohio Criminal Rule 29, or a new trial under Criminal Rule 33. (Ex. 3, Doc. 6-1, at 7-10). The trial court denied the motion. (Ex. 4, Doc. 6-1, at 12).

On April 23, 2015, the trial court dismissed Count 3 on the prosecutor's recommendation, and sentenced Petitioner to five years in prison on Count 1; the sentence also included a mandatory period of three years post-release control. (Ex. 5, Doc. 6-1, at 13-14).

Direct Appeal

Through new appellate counsel, Petitioner filed a timely notice of appeal. (Ex. 6, Doc. 6-1, at 15). In his brief, he raised five assignments of error:

1. The trial court erred when it allowed an in-court identification of Reginald Johnson under impermissibly suggestive circumstances, in violation of the Due Process Clause of the 5th and 14th Amendments to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution.

2. Reginald Johnson was denied his right to effective assistance of counsel guaranteed under the Sixth Amendment to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution.

3. The trial court erred when it overruled Reginald Johnson's request for a self-defense jury instruction, in violation of the Due Process Clause of the 5th and

---

3. The record also contains the text of the jury charge (Ex. 7, Doc. 6-1, at 16-28), and a list of what appear to be jury questions and the trial judge's responses (Ex. 8, Doc. 6-1, at 29-30).

4

14th Amendments to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution.

4. Reginald Johnson's conviction for felonious assault was not supported by sufficient evidence, in violation of the Due Process Clause of the 5th and 14th Amendments to the U.S. Constitution, and Article I, Sections 1, 10 & 16 of the Ohio Constitution.

5. Reginald Johnson's conviction for felonious assault was against the manifest weight of the evidence in violation of the Due Process Clause of the 5th and 14th Amendments to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution.

(Ex. 9, Doc. 6-1, at 32-60). The State filed a brief in response (Ex. 10, Doc. 6-1, at 61-88), and Petitioner replied (Ex. 11, Doc. 6-1, at 89-100).

On December 21, 2016, the Ohio Ninth District Court of Appeals affirmed the trial court's judgment. (Ex. 12, Doc. 6-1, at 101-16); *Johnson*, 2016 WL 7496576.

Petitioner, again through counsel, filed a timely notice of appeal with the Ohio Supreme Court. (Ex. 13, Doc. 6-1, at 117-18). In his memorandum in support of jurisdiction, Petitioner raised two propositions of law:

1. A court of appeals deprives a criminal defendant of fundamental Due Process and Fifth Amendment rights when it deems an argument waived because of a lack of formal wording, even when the substance of the objection is presented to the trial court.

2. A criminal defendant is denied the fundamental Sixth Amendment right to effective counsel by a failure to subpoena a necessary, even if not alibi, witness that would provide exculpatory testimony.

(Ex. 14, Doc. 6-1, at 119-46). The State filed its memorandum in opposition (Ex. 15, Doc. 6-1, at 147-52). On September 27, 2017, the Ohio Supreme Court declined to accept jurisdiction of Petitioner's appeal. *See* Ex. 19, Doc. 6-1, at 163 (docket sheet).[4]

---

4. Respondent represents that Exhibit 16 to Doc. 6-1 is the Ohio Supreme Court's order, however, that document is an entry granting attorney fees to Petitioner's counsel. *See* Ex. 16, Doc. 6-1, at 153. However, Respondent's assertion – that the court declined to accept the appeal – is correct.

FEDERAL HABEAS CORPUS

In the instant Petition, filed July 26, 2018[5], Petitioner raises what he describes as two grounds for relief. *See* Doc. 1-2, at 5-6, 19-21. He presents the following supporting facts:

Reginald Johnson was arrested on August 3, 2014, on felonious assault charges arising out of an incident that night at an Akron, Ohio after-hours bar. A trial was held on the charges. Standaisha Glover, a State's witness, testified but failed to identify Reginald as the ass[a]ilant. The prosecutors and lead detective had an out-of-court discussion with Glover and then sought to recall her to now identify Reginald. Defense counsel objected, and later attempted to further explain the reason for the objection, although he was interrupted by the Court. The Court allowed the testimony.

During Reginald's presentation of testimony, defense counsel sought a continuance to secure the testimony of Officer Urdiales of the Akron Police Department, as the Officer would provide exculpatory information. Defense counsel admitted to not properly subpoenaing the Officer prior to trial, and the trial court agreed that the proffered testimony was of great import. The continuance was otherwise denied.

Reginald was convicted of one count of felonious assault, a second degree felony and not guilty of the second count. The jury deadlocked as to the final count. Johnson was sentence[d] to a five year prison term.

The conviction was appealed to the Ninth District Court of Appeals. That court affirmed the conviction. In its decision, State vs. Johnson, 9th Dist. Summit County Appeal No. #27813, 2016-Ohio-8286, the court first held that because defense counsel had not stated "impermissively suggestive circumstances" or "undue prejudice" his objection was insufficient to preserve the claim. The court also held that counsel was not deficient because the officer was not an alibi witness. The court then went beyond the record to assume that some portion of the Officer's testimony could harm Reginald's case.

The Ninth Appellate Court's decision to deprive an Appellant of fundamental Due Process and Fifth Amendment rights by deeming an argument waived because of a lack of formal wording, even when the substance of the objection being obvious by context was based on an unreasonable determination of the facts in light of the evidence presented and an unreasonable application of

---

5. Pursuant to the federal prison mailbox rule, a *pro se* prisoner's pleading "is deemed filed when the inmate gives the document to prison officials to be mailed." *In re: Prison Litig. Reform Act*, 105 F.3d 1131, 1132 (6th Cir. 1997) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)). *See* Doc. 1-2, at 14 (representing Petition was placed in the prison mailing system on July 26, 2018).

Federal law. In addition, an accused criminal defendant is denied the fundamental right to effective assistance of counsel protected under the Sixth Amendment of the United States Constitution for failure to subpoena a necessary, even if not alibi, witness that would have provided exculpatory testimony. This issue is a mix[ed] question of law and fact that warrants Federal review. This Court should GRANT Reginald Johnson's writ of habeas corpus.

(Doc. 1-2, at 19-21) (capitalization altered).

<h3 style="text-align:center">STANDARD OF REVIEW</h3>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state

7

court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## DISCUSSION

Although Petitioner sets forth a single statement of supporting facts in support of his Petition, he alleges two distinct errors – first, an error with respect to the testimony of Ms. Glover, and second, a claim of ineffective assistance of counsel as it relates to Officer Urdiales's testimony. *See* Doc. 1-2, at 19-21; Doc. 8, at 5-7. The undersigned addresses each in turn below and recommends the Petition be denied.

Procedural Default: Ms. Glover's Testimony

Petitioner's first claim relates to the testimony of Ms. Glover. *See* Doc. 1-2, at 19. Specifically, Petitioner contends that "deeming an argument waived because of a lack of formal wording, even when the substance of the objection being obvious by context was based on an unreasonable determination of the facts in light of the evidence presented an unreasonable application of federal law." *Id.* Respondent contends that this claim is procedurally defaulted. (Doc. 6, at 20-27). The undersigned agrees.

Petitioners must exhaust state court remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied when a petitioner has given "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The doctrine of exhaustion "requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). A claim cannot rest on a legal theory which is separate and

distinct from the one previously considered and rejected in state court. *Id.*; *see also Williams v. Wolfenberger*, 513 F. App'x 466, 468 (6th Cir. 2013).

Related to exhaustion is the concept of procedural default. A petitioner can procedurally default a claim in two ways. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, he may fail "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* The Sixth Circuit applies a four-part test to determine whether a claim has been procedurally defaulted in this way: 1) whether there is a state procedural rule applicable to the petitioner's claim, with which he has failed to comply; 2) whether the state courts actually enforced the state procedural sanction; 3) whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim; and 4) if prongs one through three are satisfied, whether the petitioner has demonstrated cause for his failure to comply and actual prejudice resulting from the constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009). Second, a petitioner may default by failing "to raise a claim in state court, and pursue that claim through the state's ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (internal citations and quotation marks omitted).

Petitioner raised his claim regarding Ms. Glover's testimony on direct appeal and the appellate court considered it as follows:

> {¶ 9} In his first assignment of error, Mr. Johnson argues that the trial court erred when it allowed Ms. Glover to make an in-court identification of Mr. Johnson under "impermissibly suggestive circumstances." Specifically, Mr. Johnson argues that Ms. Glover's identification of him "was suspect, made under circumstances suggestive of [Mr. Johnson's] guilt, and unfairly prejudicial." Mr. Johnson contends that "[o]nly after [an] out-of-court discussion with the [assistant] prosecutor and detective could [Ms. Glover] identify him [as the assailant]." Mr. Johnson also states that his "[trial] [c]ounsel objected to the State re-calling [Ms. Glover] to testify."

9

{¶ 10} In response, the State argues that, while Mr. Johnson objected to the State re-calling Ms. Glover as a witness, Mr. Johnson "did not articulate an objection based on 'suggestive circumstances' and, therefore, has waived this argument on appeal."

{¶ 11} To preserve an alleged error for appeal, a party must timely object and state the specific grounds for the objection. *See State v. Dudukovich*, 9th Dist. Lorain No. 05CA008729, 2006–Ohio–1309, ¶ 24. A failure to do so results in a forfeiture of the objection and limits any claim of error on appeal to "[p]lain errors or defects affecting substantial rights." (Alteration sic.) *State v. Payne*, 114 Ohio St.3d 502, 2007–Ohio–4642, ¶ 15, quoting Crim.R. 52(B).

{¶ 12} Here, the record indicates that prior to re-calling Ms. Glover, the following discussion occurred among the State, defense counsel, and the trial court:

> [the State]: We would be asking to re[-]call [Ms. Glover] as a witness, Your Honor. And our case is still open. We have yet to rest.
>
> [defense counsel]: And I would just object to that.
>
> [the court]: All right. Your objection is noted, but the State is still presenting its case, and, in fact, hasn't called another witness, so I'll just allow [the State] to re[-]call [Ms. Glover].

Then, at the close of evidence, the following discussion occurred regarding the State's re-calling of Ms. Glover:

> [defense counsel]: Your Honor, one other thing just for a clear record. * * * [Ms.] Glover testified, and, Your Honor, you don't allow us to do speaking objections, and without the jury here I would just like to formalize an oral objection if you don't mind. When [Ms.] Glover was * * * testifying she stated that she did not see the person here today that committed this offense.
>
> [the court]: * * * I don't know that she said an affirmative no. She just said I can't identify the person. * * * I think that's what I recall.
>
> [defense counsel]: Your Honor, you could be correct. I somehow thought she did say no, but you could be correct. But she was up there for a period of time. I'm not sure how long, perhaps ten minutes, perhaps 20 minutes, I don't know. * * *
>
> [the court]: [The] State redirected her probably briefly and then she was done and * * * she left the courtroom.
>
> [defense counsel]: Yes, Your Honor. And so she walked out with the [assistant] prosecutor, and * * * there was a detective in the back that she

mentioned that brought her here. He went out as well. They weren't out very long; it was a few moments. * * *

[the court]: I'm guessing less than a minute.

[defense counsel]: I'm not sure, Your Honor. Then they came back in and the State asked if they could re[-]call [Ms. Glover] because it was indicated that now she could ID Mr. Johnson. And I just wanted to formalize my objection, and for those reasons why, * * * I just wanted to make a record of that.

[the court]: All right. Well, you did object at the time on the record. * * * And the [c]ourt indicated that generally speaking, when the party is still presenting their case, in other words, the State was still in the middle of presenting its case, [the State] hadn't rested, they were preparing to call another witness after [Ms. Glover], if for good cause shown they have the ability to re[-]call a witness, that's not precluded. And so the [c]ourt permitted [the State] to do that.

* * *

{¶ 13} Here, Mr. Johnson objected at the time the State re-called Ms. Glover as a witness, and then made a more specific objection at the close of evidence. However, nowhere in his second objection does Mr. Johnson claim (1) that the in-court identification was flawed due to "impermissibly suggestive circumstances," or (2) that the in-court identification was "unfairly prejudicial." In fact, Mr. Johnson had ample opportunity to raise these issues with the trial court when he stated that Ms. Glover originally left the courtroom, for "a few moments," with the assistant prosecutor and detective.

{¶ 14} The record clearly indicates that, at the close of evidence, the discussion between Mr. Johnson's counsel and the trial court focused upon the State's ability to re-call Ms. Glover as a witness, and not whether the assistant prosecutor and/or detective prompted Ms. Glover to change her prior testimony regarding Mr. Johnson's in-court identification. As such, because Mr. Johnson did not preserve this issue for appeal, we decline to address the merits of his argument. Further, because Mr. Johnson failed to argue plain error, this Court will not construct a plain error argument on his behalf. *See State v. Hairston*, 9th Dist. Lorain No. 05CA008768, 2006–Ohio–4925, ¶ 11, citing App.R. 16(A)(7); *see also State v. Rowland*, 9th Dist. Medina No. 07CA0085–M, 2008–Ohio–3213, ¶ 7. Therefore, we decline to address Mr. Johnson's argument that the trial court erred by allowing an in-court identification under "impermissibly suggestive circumstances."

{¶ 15} Mr. Johnson's first assignment of error is overruled.

*Johnson*, 2016 WL 7496576, at *1-3.

Applying the Sixth Circuit's four-part test, the undersigned notes the Ohio has a contemporaneous objection rule. *See State v. Glaros*, 170 Ohio St. 471 (1960), *State v. Mason*, 82 Ohio St. 3d 144, 162 (1998). The state court here applied that rule. *See Johnson*, 2016 WL 7496576, at *1-3. And the Sixth Circuit has repeatedly held that this rule is an adequate and independent state law ground on which the state can rely to foreclose review of a federal constitutional claim. *See, e.g.*, *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012); *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006). Petitioner argues, in essence, that the state court applied the rule incorrectly to the factual circumstances. However, Petitioner's objection is entirely based on Ohio law. And, "[f]or purposes of federal habeas analysis, whether the [appellate court] was correct or incorrect in its application of the Ohio contemporaneous objection rule is a completely academic question." *Cappadonia v. Brunsman*, 2012 WL 2341861, at *1 (S.D. Ohio), *report and recommendation adopted*, 2012 WL 2899332. This is because a federal habeas court may not second-guess a state court on questions of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Evidentiary questions in particular generally do not rise to the constitutional level unless the error was so prejudicial as to deprive a defendant of a fair trial. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983). As another district court explained: "the question is one of state law: how specific must an objection be to preserve an issue for direct appeal? The [state court] decided this question of state law adversely to Petitioner and this Court is bound by that court's interpretation of state law." *Cappadonia*, 2012 WL 2341861, at *3. Moreover, based on the record before it, the state court's interpretation – that counsel's

objection was not sufficiently specific despite the opportunity ("In fact, Mr. Johnson had ample opportunity to raise these issues with the trial court when he stated that Ms. Glover originally left the courtroom, for "a few moments," with the assistant prosecutor and detective." *Johnson*, 2016 WL 7496576, at *2) – was not an unreasonable interpretation of the record.

Furthermore, Petitioner has not shown that the state court evidentiary ruling rose to the constitutional level in that it was so prejudicial as to deprive him of a fair trial. *Cooper*, 837 F.2d at 286. As the state court succinctly explained in analyzing Petitioner's claim that the verdict was against the manifest weight of the evidence:

> The jury heard all of the testimony, including that Ms. Glover could not identify Mr. Johnson as the perpetrator when she first took the witness stand. Further, the jury heard testimony regarding: (1) the atmosphere in the bar; (2) that Mr. Johnson disrespected a female bar patron by calling her a "Zulu bitch," which started the fight; (3) that Mr. Johnson had a knife; and (4) that several people were stabbed during this altercation. After hearing the evidence, the jury chose to believe that Mr. Johnson had a knife and that he knowingly used that knife to stab W.R. in the arm. Pursuant to the definition of "knowingly" in R.C. 2901.22(B), it does not matter whether Mr. Johnson intended to stab W.R. The fact that Mr. Johnson wielded a knife during a bar fight, where several people were throwing punches, should have made him aware that someone would probably be stabbed. Further, "[c]redibility determinations are primarily within the province of the trier of fact[,]" who is " 'free to believe all, part, or none of the testimony of each witness.' " *State v. Just*, 9th Dist. Wayne No. 12CA0002, 2012–Ohio–4094, ¶ 42; *State v. Cross*, 9th Dist. Summit No. 25487, 2011–Ohio–3250, ¶ 35, quoting *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004–Ohio–7184, ¶ 35. Having reviewed the record, we cannot conclude that the jury clearly lost its way or created a "manifest miscarriage of justice." *Otten*, 33 Ohio App.3d at 340.

*Johnson*, 2016 WL 7496576, at *8. Moreover, two other individuals, including the victim, testified that Petitioner committed the assault. *See id.* at *6 ("From a photo array of six individuals, W.R. identified Mr. Johnson with '100 percent certainty as the person who stabbed him."); *id.* at *7 ("From a photo array of six individuals, Ms. Wells also identified Mr. Johnson as the person who stabbed W.R.").

Petitioner does not explicitly argue cause and prejudice to overcome his default. He does argue in Reply, however, that "[c]learly there exist[s] plain error when the State opines that Johnson's counsel failed to preserve the issue of Standaisha Glover's change of testimony because it was not specifically direct in the objection." (Doc. 8, at 5). Although "plain error" is a state-court standard, construed liberally (as a *pro se* habeas petition must be, *see, e.g.*, *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985)), it appears Petitioner is attempting to assert his trial counsel was ineffective in failing to properly preserve the objection or that his appellate counsel was ineffective in failing to argue plain error on appeal. However, even so liberally construed, Petitioner cannot overcome the default. This is because Petitioner did not raise a claim that his trial counsel was ineffective in failing to preserve the objection on direct appeal, and cannot do so now due to Ohio's *res judicata* rule. *See Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). And, any claim of ineffective assistance of appellate counsel must be presented to the state courts in an Ohio Appellate Rule 26(B) petition, and such petitions must generally be filed within 90 days of the appellate judgment. Ohio App. R. 26(B)(1). Petitioner did not do so here. This claim would thus also be procedurally defaulted for failure to raise it through the proper state court procedures. *Williams*, 460 F.3d at 806. As such, neither claim of ineffective assistance of counsel can serve as cause to overcome Petitioner's default. *See Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000).

Because Petitioner cannot show cause and prejudice to overcome his default, this Court may not consider it. For these reasons, the undersigned recommends this ground be denied as procedurally defaulted.[6]

---

6. The only other avenue to excuse procedural default requires a finding of "actual innocence." In order to advance a credible actual innocence claim, however, the petitioner must support his allegations with "new reliable evidence—whether it be exculpatory scientific evidence,

<u>Merits Review: Ineffective Assistance of Trial Counsel</u>

Petitioner's second claim relates to defense counsel's failure to timely subpoena Officer Urdiales. (Doc. 1-2, at 19-21). Specifically, he asserts that it is ineffective assistance to "fail[] to subpoena a necessary, even if not alibi, witness that would have provided exculpatory testimony." *Id.* at 21. Respondent contends this ground fails on the merits because the Ohio court's decision rejecting it is not an unreasonable application of clearly established federal law or an unreasonable determination of the facts. (Doc. 6, at 12-20). In Reply, Petitioner contends his trial counsel was ineffective "when he failed to secure the testimony of the police officer [who] would provide evidence central to showing that [Petitioner] did not match the on-scene description of the assailant." (Doc. 8, at 5). He further contends:

> The State claims that it was only at trial that trial counsel realized the potential importance of Officer Urdiales' testimony. Of course, what is clear is that counsel knowing the substance of Officer Urdiales' report, expected th[e] State to call him, but in no way undertook any action to ensure the Officer's presence.

> Had defense counsel subpoenaed the officer before trial, he could have either ensured Officer Urdiales' presence or timely sought a continuance of the matter when informed about Officer Urdiales' vacation. Instead, trial counsel left the presentation of important defense facts in the hands of the State, who chose not to call the officer.

*Id.* at 6.

To obtain relief on an ineffective assistance of counsel claim requires Petitioner to clear a doubly high hurdle. Such claims are first governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "In *Strickland*, [the Supreme] Court made clear that 'the

---

trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "Actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner does not argue this exception and, in any event, has not presented any "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" in support of such a claim. *Schlup*, 513 U.S. at 324.

15

purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . . [but] simply to ensure that criminal defendants receive a fair trial.'" *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 689) (second alteration in original). "Thus, '[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Id.* (quoting *Strickland*, 466 U.S. at 686) (alteration and emphasis in *Pinholster*)).

*Strickland* recognized the "tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence," 466 U.S. at 689, and therefore established that counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment", *id.* at 690. The Supreme Court thus imposed a two-prong framework for a defendant to overcome this strong presumption. Under *Strickland*'s first prong, Petitioner must demonstrate that "counsel's representation was deficient in that it 'fell below an objective standard of reasonableness.'" *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005) (quoting *Strickland*, 466 U.S. at 688). In assessing whether counsel's performance was deficient, this Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation and quotation marks omitted). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687). To show prejudice, Petitioner must establish "a reasonably probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 693). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

Petitioner raised his ineffective assistance of counsel claim on direct appeal[7] and the state appellate court addressed it on the merits, finding Petitioner could show neither deficient performance or prejudice:

> {¶ 16} In his second assignment of error, Mr. Johnson argues that his counsel was ineffective for failing to subpoena Officer Urdiales prior to trial. Specifically, Mr. Johnson contends that Officer Urdiales' testimony would have supported his defense.
>
> {¶ 17} In response, the State argues that counsel's performance was not deficient because, as explained on the record, counsel had no reason to subpoena Officer Urdiales prior to trial when it was the testimony at trial "that caused counsel to feel that [O]fficer [Urdiales] might be helpful in bolstering [Mr. Johnson's] theory of the case.["]
>
> {¶ 18} This Court must analyze claims of ineffective assistance of counsel under a standard of objective reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989). Under this standard, a defendant must show (1) deficiency in the performance of counsel "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial [.]" *Strickland* at 687. A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable probability that the outcome of the trial would have been different. *Id.* at 694. In applying this test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. This Court need not address both prongs of *Strickland* where an appellant fails

---

7. Petitioner raised this claim to both the Ohio appellate court, and the Ohio Supreme Court, and it is thus fully exhausted and preserved for federal habeas review. *See* Ex. 9, Doc. 6-1, at 47-49; Ex. 14, Doc. 6-1, at 127-29.

to prove either prong. *State v. Ray*, 9th Dist. Summit No. 22459, 2005–Ohio–4941, ¶ 10.

{¶ 19} In the present matter, defense counsel explained his trial strategy as follows:

* * *

We did subpoena Officer Urdiales[.] * * *

We did not subpoena him until the morning [the subpoena] was delivered to the chief's desk.

What happened was after the conclusion of the State's case * * * I felt it prudent to subpoena [Officer Urdiales] and we didn't get done here until after 4:00 [p.m.].

I went and got a green subpoena so that we could provide that. We called over and we were informed by the Akron Police Department that they would not accept a subpoena or attempt to serve that subpoena on their officer. It was less than 24 hours in advance, and we were clearly outside of that window.

*Again*, *we are only doing that because of the testimony that came out [at trial]*. Officer Urdiales was on the State's witness list and so it's not an undue surprise to them.

And then also I do believe that there were other officers that were not subpoenaed that were used by the State or they were subpoenaed in less than 24 hours as well. So we did seek to call [Officer Urdiales].

* * *

(Emphasis added.)

{¶ 20} "The mere failure to subpoena witnesses is not a substantial violation of an essential duty to a client in the absence of [a] showing that [the] testimony * * * would have assisted the defense." *State v. Wallace*, 9th Dist. Lorain No. 06CA008889, 2006–Ohio–5819, ¶ 18, quoting *Middletown v. Allen*, 63 Ohio App.3d 443, 448 (12th Dist.1989). "However, the failure to subpoena a known alibi witness is a violation of the right to effective assistance of counsel." *Wallace* at ¶ 18. Further, "[t]he failure to subpoena witnesses is not prejudicial if the testimony of those witnesses simply would have been corroborative." *Middletown* at 448.

{¶ 21} Here, based upon a police report, Mr. Johnson's counsel proffered what he believed would have been Officer Urdiales' testimony: (1) Mr. Johnson was handcuffed and patted down, but no weapon was found; (2) Mr. Johnson had a shirt

on, and his son did not have a shirt on; (3) while Mr. Johnson was detained, a "BOLO" went out for the suspects that included a clothing description, and that the suspects "possibly left in a white vehicle;" and (4) both Mr. Johnson and his son were released from custody.

{¶ 22} Although Officer Urdiales' proffered testimony may have partially corroborated Mr. Johnson's theory of the case, it did not offer Mr. Johnson an alibi at the time of the incident. *See Wallace* at ¶ 18. Additionally, we have no way of knowing the full extent of Officer Urdiales' testimony, and whether any of it would have been damaging to Mr. Johnson. Further, other witnesses testified that: (1) no weapons were found during the investigation; (2) Mr. Johnson was wearing a shirt; and (3) Mr. Johnson was initially released from custody. As such, Mr. Johnson's assertions do not overcome the presumption of competent counsel. Nor do they demonstrate prejudice by showing that, but for defense counsel's failure to subpoena Officer Urdiales, there is a reasonable probability that the outcome of trial would be different. *See Strickland*, 466 U.S. at 694.

{¶ 23} Mr. Johnson's second assignment of error is overruled.

*Johnson*, 2016 WL 7496576, at *3-5.

It is a "longstanding and sound principle that matters of trial strategy are left to counsel's discretion." *Dixon v. Houk*, 737 F.3d 1003, 1012 (6th Cir. 2013). The decisions of "whether to call a witness and how to conduct a witness' testimony are classic questions of trial strategy." *Rayborn v. United States*, 489 F. App'x 871, 878 (6th Cir. 2012); *see also Strickland*, 466 U.S. at 672-73, 698 (holding decision not to call character witnesses at sentencing was a reasonable strategic decision); *Clark v. Mitchell*, 425 F.3d 270, 286 n.6 (6th Cir. 2005) (holding decision not to call witnesses to testify at sentencing to prevent cross-examination was strategic). Moreover, "judicial scrutiny of a counsel's performance must be highly deferential" and "every effort [must] be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

The state court found Petitioner failed to show his counsel's performance was deficient, or prejudice therefrom. In so finding, the court applied the *Strickland* standard, and emphasized that

19

counsel admitted that he "was only" attempting to subpoena Officer Urdiales "because of the testimony that came out at trial." *Johnson*, 2016 WL 7496576, at *4. Thus, the state court reasonably relied on the fact that counsel himself admitted that it was a strategic decision not to subpoena the Officer before trial. *See, e.g.*, *Dixon*, 737 F.3d at 1012. Petitioner therefore did not, "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation and quotation marks omitted). Indeed, as Respondent points out, Officer Urdiales was originally on the State's witness list, suggesting his testimony may have been favorable to the State.

Petitioner argues – as he did to the state courts – that Officer Urdiales would have "provide[d] evidence central to showing that Reginald did not match the on-scene description of the assailant . . . and "would have proven centrally important to establishing that Reginald was not the assailant, because he did not match the suspect's description, did not have a weapon, and could have himself been the victim of an assault." (Doc. 8, at 5). But the state court determined – reasonably – that Petitioner had not demonstrated prejudice. Although counsel proffered what he believed the Officer's testimony would have shown (based on the police report), the appellate court noted that the proffered testimony did not offer Petitioner an alibi and was somewhat cumulative of other evidence presented. *Johnson*, 2016 WL 7496576, at *5. It also noted that it had "no way of knowing the full extent of Officer Urdiales' testimony, and whether any of it would have been damaging". *Johnson*, 2016 WL 7496576, at *5. That is, while Officer Urdiales's testimony might have supported Petitioner's defense, Petitioner had not demonstrated that it would have affected the outcome of the trial.

The state court's decision – that Petitioner had not demonstrated prejudice from counsel's failure to subpoena Officer Urdiales before trial – is not contrary to, or an unreasonable application

of *Strickland*. Indeed, the Sixth Circuit has instructed that when "one is left with pure speculation on whether the outcome of [the criminal proceeding] could have been any different, [there is] an insufficient basis for a successful claim of prejudice." *Baze v. Parker*, 371 F.3d 310, 322 (6th Cir. 2004). Petitioner has demonstrated nothing more here.

Petitioner has thus failed to meet his AEDPA burden of establishing that the state court's rejection of his ineffective assistance of counsel claim based on his counsel's failure to subpoena Officer Urdiales before trial was contrary to, or an unreasonable application of, clearly established federal law.

## CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court recommends the Petition (Doc. 1-2) be DENIED.

s/ James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).